Good morning, may it please the Court. Hanny Fukui, the Federal Defender of San Diego, on behalf of the defendant and appellant, Mr. Sandoval-Gonzalez. Your Honors, with my time before the Court, I'd like to just talk about the misconduct issue, although the Court has specific questions regarding the sentencing issue, I'm more than happy to address them. By telling the jury that they could presume that Mr. Sandoval-Gonzalez was not a United States citizen, the government relieved itself of its burden of proving beyond a reasonable doubt that he was an alien, and thus the conviction must be reversed. I think Judge Reinhart and Smith-Baltier explained that alienage is an essential element of a 1326 offense, and it's an element that the government bears the burden of proving beyond a reasonable doubt. And in this case, the prosecutor, and specifically on page 250 of the record, stated to the jury, quote, you've heard that there is a presumption that if someone is born outside of the United States, they are not considered a United States citizen, end quote. And this statement in and of itself relieved the government of its burden of proving Mr. Sandoval was an alien. And I think the biggest – It didn't say that. It didn't say the government in this case can rely on a presumption. It – the government never said the government can rely solely on this presumption. But I think when you look at the word presume and what that word means, it's clear that the jury could have easily interpreted presumption to mean that the government had carried – Was there an objection? There was, Your Honor. In fact, immediately thereafter, on page 250 of the record, as soon as the prosecutor stated they are not considered a United States citizen, there was an objection for burden shifting, which the court had overruled, and then the prosecutor continued. And it goes back to what I was saying about the word presumption. Webster's defines presumption as to supposed to be true without proof. And we know that in a criminal trial, obviously, the government bears a burden of proof. And this court in Perlaza stated that the only presumption that applies in a criminal case is the presumption of innocence. In fact, it's a presumption that carries into the jury room. And it only goes away when there's evidence that a jury finds convincing beyond a reasonable doubt. And only at that point in time does a presumption of innocence disappear and a defendant can be found guilty. And that's precisely what the problem here is with this statement. There was only one contested element in this trial at all. It was alienage. From the very beginning of the trial, I think the district court and the government was on notice that the only element that was going to be challenged was alienage. And here the jury is affirmatively told that they can presume that element has been met because a birth certificate had been admitted into evidence demonstrating that Mr. Sandoval had been born outside of the United States. So there's no issue in this case that the district court didn't allow Mr. Sandoval to submit his evidence that he had on the issue of alienage. None of that evidence was excluded or redacted. That's correct, Your Honor. There was no. He put in his evidence. That's correct. Was there an instruction given that derivative citizenship was an affirmative defense in this case? Was there an overt, in other words, an overt burden shifting going on here? There was no overt specific jury instruction that told the jury derivative citizenship is an affirmative defense. However, there are a number of other instances apart from this statement about presumption that a person born outside of the United States is not a citizen that, you know, in our opinion shows that the government had shifted the burden. And to quote from the prosecutor's closing argument, on page 251 of the record, the prosecutor told the jury, it's a reasonable inference the mere fact that the birth certificate lists the defendant's father as a national of the United States does not mean that the other elements have been established. So already we're starting to see the prosecutor using the word elements have been established, referencing back to what Mr. Sandoval had proven at trial or what he had not proven at trial. Later on in her rebuttal closing argument, the prosecutor told the jury on page 261 of the record, a reasonable inference if an individual is a United States citizen, they would let someone know. Page 264 of the record, I submit to you the United States would have known that. And she was referring to whether a person believed he was a United States citizen. And much of this came, much of these statements came, were encouraged rather by the district court because at an earlier point in the It's clear that the district court misunderstood this court's opinion in Smith-Baltier. On page 200, the district court stated, I'm not sure whether the court and the referring, the judges referring to Smith-Baltier, I'm not sure whether the court meant to refer to a defense meaning simply as negating the government's case or whether they're talking about this being a defense that the defendant carries the burden on. And then I think most damaging on page 232 of the record, the district court says it couldn't prevent the government from arguing, sure, so you've got the statement by someone who says that his father was a U.S. citizen, but you have nothing else. You haven't heard anything about whether Mr. Sandoval's father had met the other requirements of 1401. So would the government be foreclosed from taking that position? And the answer is, I don't know, because in a way that would shift the burden to the defense. So even the district court was aware and was on notice that to a certain extent, permitting the government to argue to the jury that none of the other requirements had been met by Mr. Sandoval shifted the burden onto the defense. And I think most fundamentally, it clearly misinterprets Smith-Baltier. In Smith-Baltier, this court stated that a defendant's alienage is an essential element of the 1326 offense. Because derivative citizenship would negate that element of the offense, Smith must be allowed to present that defense to the jury. It is only after the jurors consider Smith's evidence of derivative citizenship that they will be able to decide whether the government had successfully met its burden. The jury's finding would have determined only that the government had not proven beyond a reasonable doubt that Smith was an alien. All of this is on pages 921 and 922 of that decision. So it's clear that district court misunderstood Smith-Baltier. It's clear that the district court did permit Mr. Sandoval to argue his point and even gave a jury instruction regarding the requirements of derivative citizenship, explained that the fact of deportation alone was insufficient to convict Mr. Sandoval of being a deported alien found in the United States. But then earlier had basically encouraged the government to tell the jury, had given the jury free reign to argue to the jury that Mr. Sandoval hadn't carried his burden. Now, it's true that the government never used the words carry that burden. But I think when you look back to the first statement about a presumption that a person born outside of the United States is not a United States citizen, and you couple that with the other statements made regarding a reasonable inference that an individual is a United States citizen, they would let someone know. I submit to you the United States would have known if someone had made a claim to U.S. citizenship. The fact that there was the birth certificate doesn't mean that the other elements have been established. It does demonstrate that it's clear that they were trying to shift the burden. I'd like to save the rest of my time for rebuttal, and I'll have about two minutes. Thank you. Good morning again. Kyle Hoffman for the United States. I would respectfully disagree with counsel that the district court misunderstood the requirements that Smith falsified. I would respectfully suggest that the district court read and understood the case and did what he could do under the circumstances to abide by the case. What do I mean by that? I mean that the government tried to shut down cross-examination of its own witness about questions concerning derivative citizenship. The district court overruled those objections and said, I've read Smith-Gaultier. I think the defendant is entitled to ask these questions. The government, again, tried to argue that derivative citizenship was an affirmative defense. The district court, it did muse about, well, it's not clear to me whether the Smith-Gaultier court considered it a true affirmative defense or just something that was part of the evidentiary mix. But in practice, it treated it as just part of the evidentiary mix, allowed the defendant to argue from solely the birth certificate that showed, arguably, that there was United States citizenship of the father. So in that sense, I'd suggest that the district court allowed the defendant to make full use of Smith-Gaultier. No, you weren't. Were you the prosecutor at USA Today? I was not. Okay. Nor did I. Nor did you what? Mr. Curnow wrote the brief for the Southern District of California, Mr. Curnow, on some medical issues and wasn't able to attend. I see. Okay. The statement at page 250 that the prosecutor made during the closing argument says, you've heard that there is a presumption that if someone is born outside of the United States, they are not considered a United States citizen. Was there an expert, or how did the jury hear this? Was this evidence, or was this the opinion? I'm going to flatly acknowledge that that's incorrect. Okay. The jury had not heard that. Okay. What had happened was there had been a sidebar at which this argument had been made, that there's a presumption from a foreign birth, a presumption of. . . Is that true under the law? It's true under immigration law. Well, what do you mean immigration law? In IMS proceedings. Is there a case on point that says that's a correct statement of the law? Yes, actually. Well, the defendant themselves have cited such a case at Excerpts of Record 211. There was some briefing on this. Okay, so. . . But understand, I'm not saying that it's a correct statement of the law in 1326 cases. I don't believe it is.  I agree. Okay, so it's not a correct statement of the law, and it wasn't the subject of any sort of expert testimony, so it's just the random speculation of people on the street. I'm sorry? It's just random speculation that you're not born. I mean, you can hear anybody not birthed in the law say, oh, well, you know, obviously they weren't born in the United States and not a citizen. A more accurate statement would have been, you've seen a Mexican birth certificate. You can infer from that that the defendant was a Mexican. As you said to Judge Worther, it's not a correct statement of the law that there's a presumption of alienage, and it's not correct that they heard that from anyone. That's the record. That's my reading of the record. Yeah. And that was followed up by alienage must be established in the context that it seemed to mean by the defendant. Here's, I want to try to just acknowledge that that statement, the presumption of Mexican citizenship from the birth certificate was in error. I'll be really, and I'll be frank with you. I find this exceedingly troublesome and highly prejudicial and totally unnecessary for the government to have made that argument, given all the other evidence that was in this case. The state, I've acknowledged that I think the statement was incorrect. I can't say more than that, really. Well, do you have an argument that it wasn't prejudicial? Yes. What's that? The argument is that there was the other evidence going to alienage, and the jury was repeatedly instructed, as they always are. Statements of counsel aren't evidence. Well, it's more than statements of counsel. When counsel objected to that, the judge overruled it. That's true. Which would allow the jury to think that that's a correct statement. Then you say there's lots of other evidence, which gets down to the harmless error. Correct. That's the first question. And the first question about the harmless error is whether the constitutional error would have to be proven that it's harmless beyond a reasonable doubt or whether it's non-constitutional error, or it's more likely than not. Now, the other thing I think to consider along this point is that it was a half-day trial and the jury was out for a full day. And this was basically the only question, right? Well, it's true that the only question, the only disputed issue was alienage, yes. And it took the jury a full day to consider that issue, even being given the wrong burden of proof. This is where I think I disagree with Your Honor, which is that they were given the wrong burden of proof. I don't agree with that. And I do agree that the statement was incorrect, but I think they were told about burdens of proof correctly. I think they were also, they were given instruction about derivative citizenship. But one thing I'd point out to the Court is that was an instruction that was asked for by the defense. Well, the instruction was fine, wasn't it? Right. It's only that when counsel then said the burdens on the defendant, in effect, and the judge then overruled the objection. Well, I don't believe that the counsel said the burden is on the defendant, particularly in the statement about you haven't heard that any of the other elements of derivative citizenship have been established. I'd note that it was a passive voice. The head didn't say the defendant hasn't shown now. Well, we've heard there's a presumption of alienage. That wasn't correct. Yeah. No, but the effect of that. And there was an objection to that one. That one was overruled. And then the same thing happened again to the other statement. Right. What I would suggest is this, that it is true that that was an incorrect statement. I don't believe this is of the magnitude of the counsel who relies on the Palazza case where counsel said essentially you can, when you walk into the jury room, you can assume you have a presumption of guilt. This was talking about one piece of evidence. But on the issue, the critical issue, they said the presumption exists in favor of the government. You have a presumption of alienage, and that was the issue, and there isn't a presumption of alienage. I don't know why the district court didn't sustain the objection. It may have been because the objection was not really precisely, if you think about it, the proper objection would have been facts not in evidence, this states the law. Those would be either. But the combination of those two things shifted the burden. Well, that's where I'm not sure that that's the case. I would say there are other reasons for thinking the burden wasn't shifted. Well, I still want to hear your harmless error analysis. It's true the jury was out for, I think, four hours or an afternoon. Wasn't it nine hours or something? I think it was an afternoon and a morning, I believe. And the only thing I can say about that is that having tried some cases and talked to jurors afterwards, it's remarkable sometimes how little connection there is between what we, as lawyers, think the issues are and what actually is hanging a jury up. I don't know that that much emphasis should be placed on the length of the jury deliberations. I'd also suggest that there was substantial, indeed overwhelming, evidence of alienage. And it's just true. There was no evidence of the other necessary elements for there to be derivative citizenship. So the jury's conclusion was correct. And unless the Court has further questions, I would submit. Okay. Thank you. We have a couple of minutes or so. Going to Judge Reinhart's question regarding whether it was a constitutional error, it's our position it was. And the reason that is is because it deprived Mr. Reinhart of his constitutional right to have a jury, or I'm sorry, to have the government prove his guilt beyond a reasonable doubt. With respect to whether the harm. You say that, but the instructions as to the law come from the Court. The prosecutor gives his view, but the jury is warned that the statements of counsel are not evidence. And I think usually they're also warned that they have to be guided in their application of the law by the instructions given by the Court, not anything that anybody else says. So there's a disconnect there when you say they were deprived of this. They weren't deprived of this, unless the jury took the statement as being equal to or superior to the court. And how do you present that? Well, Your Honor, I think it goes to what Judge Reinhart noted about the objection being overruled. I think it's important to remember that the jury, the district court instructed the jury first and gave the jury all of the instructions regarding the law. Then the attorneys spoke and gave their closing arguments. So at the point in time when the prosecutor made the statement, which as Judge Warlaub pointed out, is not only not supported by the evidence, it's just a flat statement of the law. And when the district court overrules the contemporaneous objection at that point, it's basically the district court telling the jury that what the prosecutor said is correct. And so I think that does go to it being … Well, it could be just as well consistent with saying the jury has been instructed as to the law, so any misstatement the prosecutor makes as to the law is not something the jury will be guided by. Most judges, I don't think, like to have summation interrupted by a lot of objections. There are some lawyers who object all the time to summation or to opening argument, and this will break some of the flow. So a lot of judges will overrule objections and say, look, the lawyer has a say, but I've given you what the law is. Well, Your Honor, I think if we contrast this case with Perlaza. In Perlaza, there was a comment made by the prosecutor that there was a presumption of guilt, and there was objections made, and the district court overruled the objections. And then after, during a break and outside the presence of the jury, there was a discussion amongst the attorneys. And after the break had ended, the prosecutor came back, finished his closing argument, and then the jury was re-instructed by the district court and specifically instructed that, by the way, ladies and gentlemen of the jury, there is no such thing as a presumption of guilt. Even in that situation, this court found that the conviction had to be reversed. And I noted in Perlaza, the court didn't really decide whether the constitutional error standard of the statute was applied or the lesser standard, because it found misconduct under any standard. And in this case, there was no correction by the district court. There was no curative instruction given to the jury about this statement. And furthermore, because they had ratified, so to speak, or the district court had basically overruled the contemporaneous objection, I think it's safe to infer that the jury could have assumed that as true. My time is up anyway, sir. Thank you. Thank you, Your Honor. Thank you. In case you're sorry, you will stand submitted. We're going to take a break of about five minutes.  Thank you. Thank you. Thank you.
judges: Kozinski, Reinhardt, Wardlaw